IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSEPH MARTINEZ,

    Defendant.

Case No. 18-CR-100 MV

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Joseph Martinez's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 134. The Government filed a response [Doc. 136] and Mr. Martinez filed a reply [Doc. 137]. The parties then filed multiple supplemental briefs. Docs. 141–148. Having considered the briefing, relevant law, and being otherwise fully informed, the Court finds that Mr. Martinez's motion is well taken and will be **GRANTED**. Exercising its authority to modify Mr. Martinez's sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), the Court will reduce his term of imprisonment to time served and place him in home detention with location monitoring for a period of six months.

### BACKGROUND

This case began with Mr. Martinez's arrest on January 18, 2018. *See* Doc. 7. On September 12, 2019, he pled guilty to Counts 1 and 2 of a two-count Indictment [Doc. 117] charging him with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Possessing a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). *See* Doc. 119. The charges arose from Mr. Martinez's

possession of cocaine, cocaine base, firearms, and drug paraphernalia, discovered by Santa Fe city police officers on August 16, 2017 when they executed a state search warrant on Mr. Martinez's residence and vehicle. *See* Doc. 122 at ¶ 16.

On January 22, 2020, the Court sentenced Mr. Martinez to 60 months of imprisonment in the Bureau of Prisons (BOP) on each of the two counts, to run concurrently, followed by three years of supervised release. Doc. 131. Because Mr. Martinez spent over 24 months in custody prior to sentencing, he is currently expected to be released on April 20, 2022 and may be eligible for release to a halfway house as soon as fall 2021. *See* Docs. 134 at 1–2; 147 at 3. He now moves the Court to reduce his term of imprisonment to time served under 18 U.S.C. § 3582(c)(1)(A)(i) due to his underlying health conditions and the ongoing complications from his COVID-19 diagnosis. *See* Doc. 134 at 1.

Mr. Martinez was diagnosed with COVID-19 on June 3, 2020, while he was incarcerated at the Otero County Prison facility. Doc. 134 at 1. He experienced excruciating body aches, a debilitating ear infection, head congestion, severe earache, and chest pain. *Id*. Mr. Martinez reported on June 8th that he had lost ten pounds in less than one week. Doc. 137 at 3. He then filed supplemental briefing that indicated his symptoms and complications continued throughout the month of June and alleged inadequate medical care at Otero. *See* Docs. 139; 141. After Mr. Martinez was moved to a federal prison—the Federal Correctional Institution (FCI) Florence in Florence, Colorado—the Government submitted additional medical records from July 21–30. *See* Docs. 142; 143. These records indicated that Mr. Martinez was no longer positive for COVID-19, but that he continued to experience headaches and body aches. Mr. Martinez's most recent BOP medical records from November 25, 2020 reflect that he continues to experience headaches and has been diagnosed with type II diabetes and hypertension. *See* Doc. 149-1 at 1.

**STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A)(i), federal courts are permitted to reduce a defendant's term of imprisonment and/or modify their conditions of supervised release if, after a consideration of the factors set forth in 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act of 2018, only the director of the BOP could move for a reduction under the statute, leaving federal prisoners powerless to apply for compassionate release on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). However, in a section of the Act titled "Increasing the Use and Transparency of Compassionate Release," Congress amended the law to allow defendants to move for sentence reductions under § 3582(c)(1)(A)(i) once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

Since the passage of the First Step Act, courts have disagreed about what constitutes "extraordinary and compelling reasons" warranting relief. Some courts continue to look to a policy statement from the United States Sentencing Commission listing several circumstances in which "extraordinary and compelling reasons" exist, including where the defendant is suffering from a terminal illness or a "serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See, e.g., United States v. Willis*, 382 F. Supp. 3d 1185, 1187–88 (D.N.M. 2019) (applying U.S.S.G. § 1B1.13); *United States v. Gutierrez*, No. 05-CR-0217 RB, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (unreported) (same). The policy statement also limits relief to those defendants who are "not a danger to the safety of any other

3

person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2).

Other courts have held that because the policy statement in question predates the First Step Act and refers only to motions brought by the director of the BOP, it is no longer an "applicable policy statement" that courts must consider under § 3582(c)(1)(A) and should not therefore limit the meaning of "extraordinary and compelling reasons" warranting relief. *See, e.g., United States v. Brown*, 411 F. Supp. 3d. 446, 449–51 (S.D. Iowa 2019) (listing cases). Although the Tenth Circuit has yet to resolve this issue definitively, it recently applied the policy statement in an unpublished opinion analyzing a motion for a sentence reduction under § 3582(c)(1)(A). *See United States v. Saldana*, 2020 WL 1486892, at *2 (10th Cir. Mar. 26, 2020) (unpublished).

Despite their disagreements about the precise definition of "extraordinary and compelling reasons" justifying compassionate release, many courts over the past year have agreed that such reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID-19 while in custody. *See United States v. McCarthy*, No. 3:92-CR-0070 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (unreported) (listing cases releasing defendants with risk factors for COVID-19, including asthma, diabetes, and compromised immune systems). Some courts have based their finding on the Sentencing Commission's catch-all provision for "other" extraordinary and compelling reasons in Application Note 1(D) to U.S.S.G. § 1B1.13. *See, e.g., United States v. Gonzalez*, No. 2:18-CR-02323-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (unreported). Other courts have done so under a plain reading of § 3582(c)(1)(A) after concluding that the policy statement no longer applies. *See, e.g., United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1, 6 (E.D. Pa. Apr. 1, 2020) (unreported) (stating that, for the defendant, "nothing could be more extraordinary and compelling than this pandemic.").

## DISCUSSION

Before addressing the merits of Mr. Martinez's motion, the Court first notes that he is eligible to apply for relief in this Court because he has "fully exhausted all administrative rights" to apply for compassionate release within the BOP under § 3582(c)(1)(A). Mr. Martinez submitted a request for compassionate release to the warden of the Bureau of Prisons facility FCI Florence on September 29, 2020. Doc. 148. Since this submission, more than 30 days have elapsed without a response from the warden. This Court accordingly has jurisdiction to consider Mr. Martinez's motion for compassionate release. *See* § 3582(c)(1)(A).

On the merits, Mr. Martinez argues that his COVID-19 diagnosis and complications—and the fact that COVID-19 is an unprecedented and rapidly expanding global health emergency presenting a serious risk to prisoners—provide extraordinary and compelling reasons to grant him compassionate release. *See generally* Doc. 134. He also points to his diagnoses of hypertension and type II diabetes, which render him at high risk for additional complications or death should he contract COVID-19 a second time. Doc. 145 at 1–2. Mr. Martinez argues that both of these conditions put him at an elevated risk of infection and death from COVID-19, pointing to a statement from the American Diabetes Association that "people with diabetes face a significant and higher-than-average risk of getting seriously ill if infected with the COVID-19 virus, up to and including the risk of death," and evidence that individuals with high blood pressure also face a "high risk of complications from COVID-19." *Id*. at 4–7. Mr. Martinez further argues that his risk of contracting COVID-19 is greatly increased by his continued incarceration due to the impossibility of practicing social distancing while in custody, noting that he shares a cell, sink, and toilet with another individual. *Id*. at 6. In support, Mr. Martinez points to an open letter penned by the American Diabetes Association urging detention facilities to "explore all possible

strategies to release people with diabetes and other serious risk factors related to COVID-19, and to reduce the level of crowding in detention facilities." *Id*. at 5.

In response, the Government agrees that Mr. Martinez's documented health conditions in the context of the pandemic are an "extraordinary and compelling reason" within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i) warranting consideration of compassionate release. Doc. 146 at 14. The Government stated:

> It is the currently the position of the Department of Justice that, during the COVID-19 pandemic, an inmate who presents one of the medical conditions identified by the CDC as risk factors placing individuals at higher risk of severe outcomes from COVID-19 , as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing consideration of compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release.

*Id.* Importantly, the Government took this stance with full awareness that Mr. Martinez has already been diagnosed with COVID-19 once and has since recovered. and is now concerned with a potential second infection.

The Court finds that Mr. Martinez's underlying health conditions, which put him at a significantly increased risk of serious illness or even death from COVID-19, constitute an "extraordinary and compelling reason" warranting his compassionate release under § 3582(c)(1)(A) when combined with what appears to be an emerging outbreak of the virus at the facility in which he is presently incarcerated. The BOP's COVID-19 website indicates that new cases continue to emerge at FCI Florence: on November 17 there were 14 active cases within the inmate population, which rose to 111 active inmate cases on December 1 and 245 active inmate cases as of December 18.[1]  *See* COVID-19 Cases, Federal Bureau of Prisons, *available at*

---

[1] Judicial notice permits a district court "to accept a matter as proved without requiring the party to offer evidence of it." *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (citation and

https://www.bop.gov/coronavirus (last accessed on Dec. 18, 2020).

The seriousness of the risk that Mr. Martinez faces from COVID-19 is also apparent. The emerging outbreak at FCI Florence is consistent with the concerns expressed by public health officials about the difficulty of implementing effective preventative measures like social distancing in a prison environment. *See* Doc. 134 at 11. These concerns are certainly justified: the BOP reports that currently 5,771 federal inmates and 1,694 staff have tested positive for COVID-19, a number that does not appear to include federal inmates like Mr. Martinez who contracted COVID-19 at state and local facilities. *See* COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus (last accessed on Dec. 18, 2020). Tragically, 168 federal inmates have died from the virus so far. *Id*.

The Court finds that these unprecedented circumstances give rise to "extraordinary and compelling reasons" for compassionate release in the case of a defendant like Mr. Martinez, whose serious underlying health conditions put him at an increased risk of severe illness or death from COVID-19. *See* § 3582(c)(1)(A). To the extent that the Sentencing Commission's policy statement is still binding, this Court has previously found that the present circumstances constitute "other" extraordinary and compelling reasons for compassionate release under the catch-all provision in Application Note 1(D). *See United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *1 (D.N.M. May 14, 2020). Mr. Martinez's underlying conditions also constitute "serious physical or medical condition[s]" that "substantially diminish[] [his] ability … to provide

---

internal quotation marks omitted). A court may "only notice matters that are verifiable with certainty." *Id*. The matter must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998) (citing Fed. R. Evid. 201(b)). Rule 201(b) governs judicial notice of "adjudicative facts," which are facts of a particular case, as opposed to "legislative facts," which relate to legal reasoning and the lawmaking process. *Id*. Here, the Court takes judicial notice of the number of current cases of COVID-19 according to official BOP statistics.

self-care within the environment of a correctional facility" because they compromise his ability to effectively defend himself against infection and resulting complications if he is exposed to COVID-19. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). And to the extent that the Sentencing Commission's policy statement is no longer applicable, the Court finds that Mr. Martinez's present situation constitutes "extraordinary and compelling reasons" for compassionate release within the plain meaning of § 3528(c)(1)(A).

The Court further finds that Mr. Martinez's compassionate release will not pose a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2). Mr. Martinez argues that a sentence reduction is warranted because he is not a danger to his community, noting that he is a nonviolent individual with a limited criminal history and that he has not had any disciplinary issues while in custody. *See* Doc. 147 at 2; Doc. 136 at 16. Mr. Martinez asserts that he has a supportive extended family network and is capable of a crime and drug-free life. Doc. 147 at 3. Additionally, for the five months that Mr. Martinez was on conditions of release, from August 2017 through January 2018, he worked full-time, attended counseling, moved out of the home associated with negative acquaintances, and made amends with his community and his family—including building a relationship with his young son. Doc. 125 at 2. The Court finds that this behavior is a persuasive indication that Mr. Martinez is dedicated to living a crime-free life and that he does not pose a danger to the community. To ensure Mr. Martinez's compliance with the imposed period of six months home detention, the Court will place him on location monitoring. Because home detention is considered a special condition of supervised release, Mr. Martinez will also be under the supervision of United States Probation Office and this Court will retain the ability to place him back into custody in the event that he violates any of the conditions of his supervised release. *See* 18 U.S.C. § 3583(e)(3).

Finally, the Court finds that reducing Mr. Martinez's term of imprisonment to time served and ordering that he spend six months in home detention is supported by the factors set forth in 18 U.S.C. § 3553(a).  The offense in this case was undoubtedly serious: Mr. Martinez's possession of cocaine and firearms endangered the community.  However, the Court believes that keeping Mr. Martinez incarcerated at FCI Florence for the remainder of his sentence would fail to meaningfully advance the purposes of sentencing.  Instead, the Court believes that placing Mr. Martinez in home detention will continue to impose just punishment for his offenses by restricting his liberty while also reducing the risk to his health posed by COVID-19, a risk that the Court did not anticipate and to which it certainly did not intend to expose Mr. Martinez when it sentenced him in January.

## CONCLUSION

For the reasons stated above, Martinez's Emergency Motion for Compassionate Release [Doc. 134] is hereby **GRANTED**.  Exercising its authority under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, the Court will reduce Mr. Martinez's term of imprisonment to time served and modify his conditions of supervised release to include six months of home detention with location monitoring at a suitable residence to be determined by probation.  Mr. Martinez will be permitted to leave home for medical appointments, counseling services, and other purposes as his Probation Officer may deem essential.  Upon his release from FCI Florence, Mr. Martinez will self-quarantine for fourteen days at his residence, as approved by probation.  An amended judgment reflecting Mr. Martinez's modified sentence and conditions of supervised release will be forthcoming.

ENTERED this 18th day of December, 2020

The Honorable MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

9